**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rodger Norris,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-19-08047-PCT-DWL<br><br>**ORDER** |

Plaintiff Rodger Norris seeks judicial review of the Administrative Law Judge's ("ALJ") decision to deny his claim for disability benefits under the Social Security Act (the "Act"). (Doc. 1.) For the following reasons, the Court will reverse the ALJ's decision and remand for further proceedings consistent with this opinion.

**BACKGROUND**

On January 6, 2015, Norris filed an application for disability and disability insurance benefits under the Act for a period of disability beginning August 25, 2013. (Administrative Record at 21 [hereinafter "R."].) Norris's claim was initially denied on May 14, 2015, and upon reconsideration on October 29, 2015. (*Id*.) The ALJ held an oral hearing, at Norris's request, on August 16, 2017. (*Id*.) On February 7, 2018, the ALJ issued a written decision denying Norris's application, which became the final administrative decision when the Appeals Council denied his request for review. (*Id*. at 1.)

The ALJ concluded that Norris had severe impairments in the form of coronary artery disease and chronic pain syndrome and that he was unable to perform past relevant

work. (R. at 23, 29.) However, the ALJ determined that Norris's residual functional capacity ("RFC") included the ability to do a full range of sedentary work. (*Id.* at 25-29.) The ALJ discussed and considered other alleged impairments—including hyperlipidemia, gastroesophageal reflux disease, anxiety disorder, Asperger's disorder, and posttraumatic stress disorder, as well as other mental and physical limitations—when reaching this determination. (*Id.* at 23-29.) The ALJ concluded there were a significant number of jobs in the national economy that Norris could perform. (*Id.* at 30.)

**ANALYSIS**

I. Legal Standard

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside an ALJ's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). However, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett*

*v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, which is whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

II. <u>Issues Raised By Norris On Appeal</u>

Norris argues: (1) the ALJ erred by concluding that he lacks mental and non-exertional limitations; (2) the ALJ erred by rejecting his symptom testimony and the testimony of his mother; (3) additional evidence must be considered; and (4) the ALJ ignored Norris's degenerated lumbar and cervical spine. (Doc. 12.)

A. **Mental and Non-Exertional Limitations**

Norris contends the ALJ erred in concluding he is not mentally limited and does not have non-exertional limitations. (*Id*. at 7.) Both arguments are based on the ALJ's assignment of less-than-controlling weight to certain medical opinions.

When evaluating a medical opinion, the ALJ considers: (1) whether the physician examined the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has, particularly from objective medical

evidence; (4) the consistency of the opinion with the record as a whole; (5) the physician's specialization; and (6) "other factors." 20 C.F.R. § 416.927(c). Generally, opinions of treating physicians are entitled to the greatest weight; opinions of examining, non-treating physicians are entitled to lesser weight; and opinions of non-examining, non-treating physicians are entitled to the least weight. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). If the ALJ discredits a controverted opinion of a treating or examining physician, the ALJ must provide "specific and legitimate" reasons supported by substantial evidence. *Id*. An ALJ satisfies the "substantial evidence" requirement by providing a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Id*. However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

1. <u>Mental limitations</u>

The ALJ concluded that although Norris had medically determinable mental impairments of anxiety disorder, Asperger's syndrome, and posttraumatic stress disorder, those conditions "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (R. at 24.) In reaching this conclusion, the ALJ considered the so-called "paragraph B" criteria set out at 20 C.F.R. § Pt. 404, Subpt. P, App. 1. (*Id.*) The paragraph B criteria assess functional limitations in a claimant's ability to (a) understand, remember, or apply information, (b) interact with others, (c) concentrate, persist, or maintain pace, and (d) adapt or manage oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The ALJ concluded that Norris had "mild" limitations in all four categories. (R. at 24.)

a. *Dr. Krabbenhoft*

Dr. Jonna Krabbenhoft examined Norris on April 8, 2015 and concluded that Norris had psychological limitations that were expected to last for at least 12 months. (R. at 802.) In support of this opinion, Dr. Krabbenhoft analyzed the Paragraph B criteria. She

concluded that two of those criteria did not support a finding of impairment—specifically, the "understanding and memory" criterion did not support a finding of impairment because Norris had scored 28 out of 30 on the mini-mental status examination ("MMSE") and the "adapting to change" criterion also did not support a finding of impairment. (*Id.*) As for the "sustained concentration and persistence" criterion, she concluded that Norris was only "able to follow simple instructions" in light of his "history of termination (10-15 jobs) related to performance and conflict." (*Id.*) Finally, as for the "social interaction" criterion, she opined: "Abrasive, irritable mood with avoidant eye contact. [Norris] indicated a history of significant conflict with others in personal and professional relationships. [Norris] often swore in his responses to questions or in response to examiner questions . . . . Limited social reciprocity was established, due to abrasive demeanor." (*Id.*

The ALJ assigned "little weight" to the opinion of Dr. Krabbenhoft. (R. at 27.) The ALJ identified three reasons for this conclusion. First, the ALJ was "unable to assign any weight" to the opinion that Norris had limited social reciprocity because the opinion "is expressed in terms of possible limitations rather than a clear opinion regarding the claimant's limitations due to psychological impairments." (*Id.*) Second, the ALJ stated that the "limitation to simple instructions" was "incongruent with the available evidence, which shows that [Norris] able to provide information about his health, describe his prior work history, respond to questions from medical providers, and there is no mention of any issues with [Norris's] short- or long-term memory." (*Id.*) Third, the ALJ noted that Norris scored 28 out of 30 on the MMSE, "which indicates normal cognition" and "is also inconsistent with the limitation to simple work." (*Id.*)

Because Dr. Krabbenhoft was an examining physician, the ALJ was required to provide "specific and legitimate" reasons, supported by substantial evidence, before rejecting her opinion. *Garrison*, 759 F.3d at 1012. The ALJ failed to do so. The ALJ's first proffered reason was not legitimate and not supported by substantial evidence. Dr. Krabbenhoft's opinion concerning the "social interaction" criterion was not equivocal or unclear. She provided the opinion underneath the portion of the form that required her to

"give us a statement of your medical opinion based on your own substantiated medical findings about what the individual can still do despite his impairment(s)." (R. at 802.) She identified an array of reasons why Norris's ability to get along with co-workers and respond to supervision might be impaired and then concluded: "Limited social reciprocity was established." (*Id.*) Thus, the ALJ's conclusion that Dr. Krabbenhoft failed to provide a "clear opinion regarding the claimant's limitations due to psychological impairments" (R. at 27) is belied by the record.

Nor is there substantial evidence supporting the ALJ's second proffered rationale—that Dr. Krabbenhoft's opinion that Norris was only "able to follow simple instructions" was "incongruent with the available evidence." In support of this conclusion, the ALJ merely offered an undifferentiated citation to hundreds of pages of the record. Additionally, even assuming that the cited medical records show that Norris was able to describe his prior work history and respond to questions from medical providers, the ALJ did not attempt to explain why such conduct is inconsistent with the conclusion that Norris is limited to simple work. *Cf. Larrison v. Comm'r of Soc. Sec. Admin.*, 2020 WL 1150051, *2 (D. Ariz. 2020) ("It is not sufficient for an ALJ to identify a . . . physician's opinion, summarize the clinical evidence, and then offer the *ipse dixit* that the two are in conflict—reasoning and explanation are required."). Similarly, a lack of memory loss is not necessarily inconsistent with an ability to perform only simple work—mental limitations apart from memory could conceivably undermine work capacity.

The ALJ's final reason for rejecting Dr. Krabbenhoft's opinion—that Norris's MMSE score indicated "normal cognition"—is not legitimate. Indeed, Dr. Krabbenhoft specifically acknowledged that Norris's MMSE score precluded a finding of impairment as to one of the Paragraph B criteria—the criterion that addresses "understanding and memory." But the ALJ did not attempt to explain, let alone persuasively explain, why the MMSE score also undermined Dr. Krabbenhoft's opinions as to the other Paragraph B criteria, which don't address the claimant's cognitive ability and instead touch upon other aspects of psychological functioning, such as persistence and the possession of the social

skills necessary to hold down a job.

Because the ALJ failed to provide legally sufficient reasons for rejecting Dr. Krabbenhoft's opinions about Norris's mental limitations, the Court must next consider whether the error was harmless. An error is harmless if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). The relevant inquiry is not whether the ALJ would have made a different decision absent the error, but whether the ALJ's decision is legally valid despite the error. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Here, the ALJ's error in assigning little weight to Dr. Krabbenhoft's opinion was not harmless because the ALJ did not consider Norris's limited social reciprocity and limitation to simple instructions when calculating his RFC. This was not inconsequential to the final determination and is a reversible error.

b. *State psychological consultants*

The state psychologist consultants, Dr. Stacy Koutrakos and Dr. Andres Kerns, reviewed Norris's records as a result of his application for disability benefits and completed mental RFC assessments. (R. at 119-21, 140-42.) Both doctors concluded that Norris had limitations in the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (*Id.*) Both doctors also concluded that Norris was able to "carry out at least simple instructions" and "adapt to at least simple work changes." (*Id.*) Dr. Kerns additionally noted that Norris "would do best in work settings requiring minimal social interaction." (*Id.* at 142.)

The ALJ assigned "little weight" to these doctors' opinions for two of the same reasons that she provided when rejecting Dr. Krabbenhoft's opinion: (1) they were "inconsistent with the available evidence, which shows that [Norris] was able to provide information about his health, describe his prior work history, respond to questions from medical providers, and there is [not] any mention of any issues with [Norris's] short- or -long-term memory," and (2) Norris's MMSE score, which "indicates normal cognition"

and is "inconsistent with the limitation to simple work." (*Id.* at 28-29.)

It's not clear that the state psychologists' opinions were as inconsistent with the ALJ's opinion as the ALJ assumed. As the Commissioner points out, both doctors concluded that Norris was capable of managing "at least" simple instructions and work changes (Doc. 13 at 10), which is difficult to reconcile with the ALJ's description of these opinions as a "limitation to simple work" (R. at 29). Nevertheless, as with Dr. Krabbenhoft, the ALJ's proffered reasons for rejecting the state psychologist consultants' opinions were erroneous and this error was not harmless.

### 2. Non-exertional limitations

The ALJ concluded that Norris could perform a full range of sedentary activity as defined by 20 C.F.R. § 404.1567(a).[1] (R. at 27.) The ALJ thus relied on the Medical Vocational Guidelines ("the grids") set out at 20 C.F.R. § Pt. 404, Subpt. P, App. 2. (*Id.* at 30.)

Norris argues the ALJ failed to accord proper weight to opinions of treating and examining physicians when concluding he could perform a full range of sedentary work. (Doc. 12 at 11-15.) Norris identifies two physicians, Dr. Mathew Khumalo and Dr. Heather Fields, whose opinions were given improper weight and argues that because he is incapable of a full range of sedentary work, the ALJ's reliance on the grids was reversible error. (*Id.*)[2]

#### a. *Dr. Khumalo*

On April 27, 2015, Dr. Khumalo performed a disability physical evaluation of Norris. (R. at 804.) Dr. Khumalo concluded that Norris had non-exertional limitations in

---

[1] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

[2] Use of the grids is "inappropriate where the predicate for using the grids—the ability to perform a full range of either medium, light or sedentary activities—is not present." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). "When a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable" and the ALJ must consult a vocational expert. *Id.* Non-exertional limitations are those which do not directly affect a claimant's strength, and include mental limitations, sensory limitations, postural limitations, and environmental limitations. 20 C.F.R. § 416.969a(c).

1  that (a) he can never climb ladders, rope, or scaffolds, and (b) he cannot work in environments involving heights, moving machinery, extremes in temperatures, chemicals, and dust/fumes or gases. (*Id.* at 808.)

The ALJ began by noting that "the undersigned has assigned the claimant to sedentary work, which would be more limited than [the work] assigned by Dr. Khumalo." (R. at 28.) Next, the ALJ stated that Norris's "ejection fraction of 45 to 50 percent and long history of abdominal pain suggest a slightly lower exertional level." (*Id.*) For these reasons, the ALJ assigned "partial weight" to Dr. Khumalo's opinion. (*Id.*)

These were not specific and legitimate reasons, supported by substantial evidence, for assigning only partial weight to Dr. Khumalo's opinion. First, it is unclear whether the ALJ's observation that her conclusion as to Norris's RFC (*i.e.,* he can perform a full range of sedentary work) differed from Dr. Khumalo's opinion was intended to serve as a rationale for rejecting Dr. Khumalo's opinion. If so, this reason was circular and illegitimate. *Cf. Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017) ("Because the claimant's symptom testimony must be taken into account when the ALJ assesses the claimant's RFC, it cannot be discredited because it is inconsistent with that RFC. [This practice] puts the cart before the horse."). Second, the ALJ's only other proffered reason for rejecting Dr. Khumalo's opinion—Norris's "ejection fraction of 45 to 50 percent and long history of recurrent abdominal pain suggest a slightly lower exertional level"—is insufficient. "An 'ejection fraction' is the percentage of blood pumped with each heart beat." *Bolt v. Honeywell Int'l Inc.*, 814 F. Supp. 2d 913, 916 n.1 (D. Ariz. 2011). The Court cannot discern from the ALJ's opinion why this particular ejection fraction range is significant. Moreover, Dr. Khumalo's opinion pertained to non-exertional limitations, not exertional limitations.

These errors were not harmless. The ALJ's reliance on the grids in concluding that Norris was not disabled, which would have been impermissible in the presence of significant non-exertional limitations, was not inconsequential to the final determination.

…

b. *Dr. Fields*

Dr. Fields is Norris's treating physician. On July 27, 2017, Dr. Fields concluded that Norris had non-exertional limitations in that he (a) requires a cane to walk, (b) is unable to climb or balance, and (c) cannot work around moving machinery. (R. at 1160-62.)

The ALJ assigned "minimal weight" to Dr. Fields's opinion because (1) she is not a specialist in the area in which she submitted an opinion and (2) her opinion was "quite conclusory and provides little explanation as to the conclusions reached." (*Id.* at 28.)

These were not specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Fields's opinion. First, as for specialization, neither the ALJ nor the Commissioner explain why a specialization in internal medicine means Dr. Fields's opinion concerning Norris's non-exertional limitations should be discounted. Additionally, although 20 C.F.R. § 404.1527(c)(5) provides than an ALJ shall "give more weight" to the opinion of a specialist, it doesn't say that an ALJ may categorically reject the opinion of a doctor who isn't a specialist. Second, although it's true that the form in which Dr. Fields ultimately provided her opinion was a check-box form that contains little explanation, the record also contains a large volume of notes from Dr. Fields concerning her interactions with Norris. Thus, it was error for an ALJ to reject Dr. Fields's opinion solely because the check-box form itself was conclusory. *Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014). *Compare Turner v. Comm'r of Soc. Sec. Admin.*, 2020 WL 1026484, *11 (D. Ariz. 2020) ("Here, Dr. Bitza's opinion consists of brief comments on a check-box form, and he provided no clinical or laboratory findings to support his opinion . . . . Thus, this is not a case like *Garrison*, where the court found that the ALJ erred in rejecting a check-box form where the doctor's opinion was 'based on significant experience with Garrison and supported by numerous records, and [was] therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit'") (citation omitted).[3]

---

[3] The Commissioner argues that Dr. Fields's notes and clinical and diagnostic findings do not support the opinion set forth in the check-box form. (Doc. 13 at 13-15.) Whether or not this is true, it isn't the reason the ALJ provided for rejecting Dr. Fields's opinion. As noted, the Court must limit its review to the "reasoning and factual findings

The error in assigning minimal weight to Dr. Fields's testimony and ignoring the non-exertional limitations she found was not inconsequential to the outcome because it meant the ALJ used the grids to reach a nondisability finding, which would have been inappropriate given a finding of significant non-exertional limitations.

B. **Testimony Of Norris And Norris's Mother**

The ALJ discounted Norris's testimony because she found that "numerous exams noted signs and symptoms of malingering" and that Norris's complaints about his pain were "out of proportion with the record." (R. at 26, 27.) The ALJ also assigned little weight to the opinions of Norris's mother regarding Norris's limitations because they were "lay opinions based on casual observation" and "lack[ed] substantial support from objective findings in the record." (*Id.*) Norris argues that both credibility assessments require reversal. (Doc. 12 at 15.)

1. *Norris*

The ALJ found that Norris was malingering. (R. at 27.) Norris argues that the exhibits the ALJ cited in support of this conclusion contain no explicit evidence of malingering. (Doc. 12 at 16; Doc. 14 at 5.) The Commissioner argues that although there are "no explicit notes of malingering, there are indications that Plaintiff likely exaggerated the extent of his pain symptoms to receive additional medication" and thus the ALJ's finding was correct. (Doc. 13 at 19.)

A claimant's subjective complaints concerning his or her limitations are an important part of a disability claim. Absent affirmative evidence of malingering, the ALJ may only discount a claimant's statements and testimony for "specific, clear and convincing" reasons that are supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Thomas*, 278 F.3d at 959. Put another way, "[t]he only time this standard does not apply is when there is affirmative evidence that the claimant is malingering." *Carmickle,* 533 F.3d at 1160. "Malingering is defined as the intentional

---

offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray,* 554 F.3d at 1226.

production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining financial compensation, evading criminal prosecution, or obtaining drugs." *Hadley v. Colvin*, 2013 WL 4206834, *2 n.2 (C.D. Cal. 2013).

Here, although the ALJ's non-specific citation to two exhibits that total over 200 pages didn't do the parties and the Court any favors, the record does contain affirmative evidence of malingering. One hospital record notes, "Psychiatry and GI consult . . . made mention of drug-seeking behavior. The patient indeed did frequently request narcotics during his stay, the 2 times that I saw him he appeared comfortable when I first opened the door and found him in his room, but during our visits, he writhed in pain and wailed and cried throughout the visit." (R. at 354.) The doctor in that record noted that "[Norris] was rather upset about not being given narcotics and signed out against medical advice." (*Id*.) During another emergency room visit, the doctor noted that "[Norris] appeared in a great deal of discomfort. However, after I spoke to him about the fact that I was going to discharge him on some narcotics, his symptoms appeared to abate." (*Id*. at 456.) Similarly, during another emergency room visit, a different doctor wrote that Norris was "moaning in pain very loudly throughout his emergency department course . . . [but] instantly became very calm and conversational whatever [sic] we are discussing pain medication treatments . . . I would recommend that his care plan the changed [sic] to say 'no narcotics for subjective complaints.'" (*Id*. at 546.)

Norris argues that "affirmative (i.e. explicit) evidence of malingering is required in order for an ALJ to be relieved of her burden to provide legally sufficient reasons for rejecting a claimant's medical testimony." (Doc. 14 at 5.) Although it's true that the term "malingering" is absent from the evidence the Commissioner and the Court were able to identify within the ALJ's cited sources,[4] the ALJ pointed to evidence showing that Norris repeatedly produced false or exaggerated symptoms motivated by external incentives. The

---
[4] Explicit evidence of malingering is not absent from the record as a whole. One set of notes states that Norris had "[n]umerous exams [with signs and symptoms] of malingering, drug seeking behaviors." (R. at 137.)

caselaw calls for affirmative evidence, which is present in the record, and Norris has not identified a case suggesting that "malingering" itself is a magic word that must appear in the record to support an ALJ finding of malingering. The ALJ's explanation of Norris's malingering is far from a model of clarity, but where, as here, the evidence is "susceptible to more than one rational interpretation, one of which supports the ALJ's decision," the Court must affirm the ALJ's finding. *Thomas*, 278 F.3d at 954. Because the ALJ made a finding of malingering, it was not a legal error to discount the credibility of Norris's testimony.

2. *Norris's mother*

Norris's mother testified that Norris had "significant difficulty remembering, walking, and standing" and that he "had been fired or laid off twice due to constant absenteeism." (R. at 26.) The ALJ provided two reasons for rejecting this testimony: (1) her reports were "lay opinions based on casual observation, rather than objective medical testing," and (2) like Norris's allegations, "they lack substantial support from objective findings in the record." (*Id*.) Norris argues that discounting his mother's testimony because she is a lay witness is legally insufficient. (Doc. 12 at 20.) The Commissioner responds that inconsistency with medical evidence is a germane reason for discounting lay witness testimony. (Doc. 13 at 19.)

"Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). "[R]egardless of whether they are interested parties, friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her condition." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). The ALJ must provide reasons "that are germane to each witness" to reject a lay witness' testimony. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). "An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)

(citation omitted). However, an ALJ may not "discredit . . . lay testimony as not supported by medical evidence in the record." *Bruce*, 557 F.3d at 1116.

Here, Norris is correct that his mother's status as a lay witness was an improper reason for the ALJ to discredit her testimony. However, Norris did not properly challenge, in his opening brief, the ALJ's other reason for rejecting his mother's testimony. The Court "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief." *Carmickle*, 533 F.3d at 1161 n.2. *See also Lewis*, 236 F.3d at 517 n.13. Thus, the Court will affirm the ALJ's decision to discredit Norris's mother's testimony.

### C. **Consideration Of Additional Evidence**

Norris argues that the evidence he submitted to the Appeals Council must be considered by this Court on appeal. (Doc. 12 at 21.) Norris explains that this evidence helps support Dr. Fields's opinion about his limitations. (*Id*. at 21-22.) The Commissioner argues that the evidence Norris submitted to the Appeals Council does not change the fact that substantial evidence supports the ALJ's decision. (Doc. 13 at 22.) Here, because the Court has already found that the ALJ erred in assigning minimal weight to Dr. Fields's opinion, the issue of whether the additional evidence would warrant remand is moot.

### D. **Norris's Degenerated Lumbar And Cervical Spine**

Finally, Norris argues that the ALJ erred in failing to acknowledge evidence of his degenerated lumbar and cervical spine. (Doc. 12 at 23.) The Commissioner responds that Norris has failed to identify evidence showing that these degenerative changes constituted a severe impairment, making further analysis by the ALJ unnecessary. (Doc. 13 at 5.)

Under 20 C.F.R. § 404.1521, a medically determinable impairment "must be established by objective medical evidence from an acceptable medical source" and "must result from anatomical, physiological, or psychological abnormalities." If there's a medically determinable impairment, the ALJ must determine whether the impairment is severe. *Id*. "An impairment . . . may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to

work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." *Id.* at 687 (internal quotation omitted).

Here, the Commissioner appears to concede that Norris had an impairment. (Doc. 13 at 4.) Because Norris had a medically determinable impairment, it was necessary for the ALJ to assess whether this impairment was severe or identify medical evidence clearly establishing that it was not severe. It was an error to neglect all discussion of Norris's spine.

This error was not harmless. Some courts have concluded that an error with respect to the severity of an impairment is "harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence." *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008). The Ninth Circuit's guidance is less conclusive but appears to require consideration of the impairment at least at step four in the event the impairment is found not to be severe. *Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless."). Here, there was no discussion at all of Norris's degenerated lumbar and cervical spine. The ALJ's failure to consider Norris's degenerated lumbar and cervical spine is another error requiring reversal.

III. Remand Is Appropriate

Norris requests either a finding that he is entitled to disability benefits or a remand for further consideration. (Doc. 12 at 25.)

In general, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). The alternative, a remand for benefits, is appropriate only in "rare circumstances."

*Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099-1102 (9th Cir. 2014). These rare circumstances arise when three elements are present. First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence or claimant testimony. *Id.* at 1100-01. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id.* at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id.* Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id.* (citations omitted). Additionally, "even when those rare circumstances are present, [t]he decision whether to remand a case for additional evidence or simply to award benefits is in our discretion." *Id.* at 1101-02 (quotations omitted).

Here, the record is incompletely developed, most notably with respect to the records pertaining to Dr. Fields that were unavailable to the ALJ during the first hearing. Additionally, the Court harbors doubt as to whether Norris is, in fact, disabled in light of the evidence of malingering. Accordingly, the case will be remanded for further proceedings.

Norris also seeks an award of attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). The Court instructs Norris to file a motion in conformance with 28 U.S.C. § 2412(d)(1)(B) if he intends to pursue such an award.

**IT IS THEREFORE ORDERED** reversing the decision of the ALJ and remanding for further administrative proceedings consistent with this Order. The Clerk of Court shall enter judgment accordingly and terminate this case.

Dated this 1st day of April, 2020.

Dominic W. Lanza
United States District Judge